[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 20 2000
THOMAS K. KAHN
CLERK

_____

No. 99-12953
Non-Argument Calendar

_____

D.C. Docket No. 97-06177-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHEN GENE REYNOLDS,

Defendant-Appellant..

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(June 20, 2000)**

Before EDMONDSON, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Stephen Reynolds appeals his conviction and 180-month sentence for possession of a firearm by a convicted felon. On appeal, Reynolds contends that his conviction should be reversed because the government failed to prove that the firearm had a connection with interstate commerce. He further argues that his sentence should be vacated and remanded because: (1) the application of the armed-career-criminal enhancement, requiring that Reynolds be subject to a 15-year mandatory minimum sentence, violated the Ex Post Facto Clause and the Eighth Amendment prohibition against cruel and unusual punishment; and (2) the district court erred in denying Reynolds a downward departure based on a lesser harms theory.

We review the constitutionality of statutes de novo. See Gay Lesbian Bisexual Alliance v. Pryor, 110 F.3d 1543, 1546 (11th Cir. 1997). We review issues raised for the first time on appeal for plain error. See United States v. Williams, 121 F.3d 615, 618 (11th Cir. 1997), cert. denied, 523 U.S. 1065, 118 S.Ct. 1398, 140 L.Ed.2d. 656 (1998). Upon thorough review of the Presentence Investigation Report ("PSI"), the sentencing hearing transcript, and all other relevant portions of the record, we find no reversible error and affirm.

The facts are straightforward. Pursuant to a written plea agreement, Reynolds pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. §§922(g)(1) and 924(e)(1). Reyonlds, a convicted felon, pawned a Mossberg 12-

gauge shotgun on March 18, 1997, and, soon thereafter, on April 4, 1997, he retrieved the shotgun from the pawnshop. The shotgun was manufactured in Connecticut and the pawnshop was located in Florida. Reynolds had a series of prior felony convictions, including a 1984 conviction for delivery of cocaine, a 1985 robbery conviction, a 1990 aggravated battery conviction, a 1994 conviction for possession of cocaine and cannabis, another battery conviction in 1995, and a 1997 conviction for burglary.

The Presentence Investigation Report recommended that Reynolds be sentenced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §924(e), and its corresponding sentencing guideline, U.S.S.G. §4B1.4, which impose a mandatory minimum sentence of 15 years on those convicted under §922(g)(1) who have at least three prior violent or drug-related felony convictions. The PSI listed three predicate felony convictions, the 1984 cocaine conviction, the 1985 robbery conviction, and the 1994 conviction for possession of cocaine and cannabis. Reynolds objected to the application of the armed career criminal enhancement, claiming that the use of the 1984 cocaine delivery offense was a violation of the Ex Post Facto Clause of the United States Constitution because the ACCA was enacted in 1984 and did not provide for drug related offenses to be used as predicate offenses until 1986, yet the PSI used as a predicate a felony that predated the Act. He further claimed that

application of the armed career criminal enhancement violated the Eighth Amendment's prohibition against cruel and unusual punishment because the conduct in this case involved the mere possession of an otherwise legal shotgun which he claims he possessed for the purpose of pawning to remove it from access by a teenager. He also requested a downward departure pursuant to the "lesser harms" guideline, U.S.S.G. §5K2.11, claiming that he committed the offense to avoid a perceived greater harm.

At sentencing, the district court summarily overruled both of Reynolds's constitutional challenges to the application of the armed career criminal enhancement. Recognizing that the district court could not depart even if it wanted to because of the mandatory minimum, defense counsel proffered to the court the testimony he would have presented in support of a downward departure based on a lesser harms theory. He claimed that, while Reynolds was helping his sister-in-law take care of her children, he noticed that his nephew, a manic depressive who had many contacts with law enforcement, had access to a firearm, which Reynolds took and brought to a pawnshop. The district court added that if it had the authority, it would deny the departure based on the facts and then sentenced Reynolds to the statutory minimum of 180 months imprisonment.

First, we are unpersuaded by Reynolds's argument that the application of the ACCA to this case violates the Ex Post Facto Clause. The Ex Post Facto Clause of the United States Constitution, Article 1, section 9, "bars laws that 'retroactively alter the definition of crime or increase the punishment for criminal acts.'" United States v. Rosario-Delgado, 198 F.3d 1354, 1356 (11th Cir. 1999)(quoting California Dept. of Corrections v. Morales, 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995)). Two essential elements must be present for a criminal law to violate the Ex Post Facto Clause: first, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it. Id.

In this case, the ACCA was applied to Reynolds's possession of a firearm in the spring of 1997, more than ten years after the Act was enacted. Indeed, at the time of Reynolds's possession of the shotgun, plainly he was on notice that as a felon convicted three times he would receive a 15-year mandatory minimum sentence if convicted of violating 18 U.S.C. §922(g). In no sense did the statute impose or increase punishment for a crime committed before its enactment. As the Supreme Court observed in a similar case involving a sentencing enhancement on account of three prior predicate offenses that had occurred before the Pennsylvania Habitual Criminal Act was passed:

> The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.

Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948). We hold that in applying the ACCA, the use of predicate felonies committed before the ACCA was enacted does not violate the Ex Post Facto Clause.

We agree with the Fourth Circuit that the ACCA's use of prior felony predicates, even where such convictions occurred before the effective date of the ACCA, does not violate the Ex Post Facto Clause. See United States v. Etheridge, 932 F.2d 318, 323 (4th Cir.)(affirming a conviction for a felon in possession of a firearm enhanced under 18 U.S.C. §924(e), even though each predicate offense occurred before the enactment of §924(e)), cert. denied, 502 U.S. 917, 112 S.Ct. 323, 116 L.Ed.2d 264 (1991). Cf., United States v. Lozano, 138 F.3d 915, 916-17 (11th Cir. 1998)(upholding the application of an enhancement under 8 U.S.C. §1326(a) based upon the commission of a prior aggravated felony, although the defendant committed the prior felony before the enactment of the enhancement).

We are also unpersuaded by Reynolds's argument that the district court erred in finding that the sentence imposed pursuant to the ACCA did not violate the Eighth Amendment's prohibition against cruel and unusual punishment. "In non-capital cases, the Eighth Amendment encompasses, at most, only a narrow proportionality

6

principle." United States v. Brant, 62 F.3d 367, 368 (11th Cir. 1995)(relying on Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). Under Brant, a reviewing court must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed and, if it is grossly disproportionate, the court must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions. Brant, 62 F.3d at 368.

Reynolds was sentenced pursuant to the armed career criminal provisions of §924(e), and the mandatory sentence of 15 years imposed on him was not grossly disproportionate to his offense of possession of a firearm by a three-time felon. His predicate crimes include a serious drug offense, a robbery where he pretended to have a gun and robbed a store clerk, and an aggravated battery where he detained the victim while his codefendant struck the victim in the head with a closed fist. Nevertheless, Reynolds argues that his recent possession of the firearm was for an innocent reason. Sections 922(g) and 924(e)(1), however, do not focus on the motive or purpose of the current possession of firearms, but rather on the fact that a person with three or more violent felony or serious drug convictions currently possesses a firearm. See United States v. Funches, 135 F.3d 1405, 1407 (11th Cir.)(stating that a §922 offense is a strict liability offense and a defendant's state of mind is generally irrelevant), cert.

denied, 524 U.S. 962 (1998). The mandatory sentence of 15 years was not grossly disproportionate to his offense.

We add that every circuit to have considered this issue has concluded that the 15-year minimum mandatory sentence under ACCA is neither disproportionate to the offense nor cruel and unusual punishment. See e.g., United States v. Cardoza, 129 F.3d 6, 18 (1st Cir. 1997)(affirming sentence of 235-month imprisonment for possession of a single bullet in light of previous felony convictions); United States v. Presley, 52 F.3d 64, 68 (4th Cir. 1995)(holding that a 15-year sentence under the ACCA is neither disproportionate to the offense nor cruel and unusual punishment); United States v. Warren, 973 F.2d 1304, 1311 (6th Cir. 1992)(upholding 15-year sentence where the defendant had pawned a pistol and later retrieved it, allegedly for a friend); United States v. Mitchell, 932 F.2d 1027, 1028 (2d. Cir. 1991)(dismissing claim that 15 years' imprisonment for violations of 18 U.S.C. §922(g) is cruel and unusual punishment under the Eighth Amendment); United States v. Hayes, 919 F.2d 1262, 1266 (7th Cir. 1990)(holding that "'[a] mandatory minimum sentence of fifteen years for a defendant with three prior felony convictions (and who has now been convicted of yet another felony) is not constitutionally disproportionate.'")(quoting United States v. Dombrowski, 877 F.2d 520, 526 (7th Cir. 1989), cert. denied, 496 U.S. 907, 110 S.Ct. 2592, 110 L.Ed.2d 272 (1990)); United States v. Baker, 850 F.2d

8

1365, 1372 (9th Cir. 1988)(upholding15-year sentence in face of Eighth Amendment challenge even though defendant testified that he did not know the guns were in his car).

We are also satisfied that the district court did not err in denying Reynolds a downward departure based on a lesser harms theory under U.S.S.G. §5K2.11. Generally, a defendant may not appeal a district court's refusal to depart downward. See United States v. Webb, 139 F.3d 1390, 1394 (11th Cir. 1998). A defendant may appeal the court's failure to depart downward, however, if the district court erroneously believed it lacked the authority to depart. See id.

Reynolds does not argue that the district court misconstrued its authority to depart; he claims only that the court erred in not departing. Accordingly, he may not appeal the court's refusal to depart. Moreover, the statutes under which Reynolds was convicted and sentenced provide for a mandatory minimum sentence of 15 years. 18 U.S.C. § §922(g)(1) and 924(e)(1). While there are limited circumstances where a district court may impose a sentence beneath the statutory minimum, e.g., where the government files a U.S.S.G. §5K1.1 motion for substantial assistance, see United States v. Smith, 39 F.3d 1143, 1146 (11th Cir. 1994), Reynolds has provided no authority for a departure below the statutory minimum in this case. In fact, at sentencing, he conceded that the court could not depart. Because the district court did

not have authority to sentence Reynolds below the statutorily required minimum sentence, plainly it did not err in declining to depart downward.

Finally, we are unpersuaded by Reynolds's argument that the district court did not have jurisdiction to adjudicate facts surrounding the pawning of a shotgun and redeeming it because these transactions involved wholly intrastate activity. Because Reynolds failed to raise this issue in the district court, we review only for plain error. United States v. Williams, 121 F.3d 615, 618 (11th Cir. 1997), cert. denied, 523 U.S. 1065, 118 S.Ct. 1398, 140 L.Ed 2d 656 (1998). While a knowing and voluntary guilty plea waives the right to appeal all nonjursidictional challenges to a conviction, see United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998), a guilty plea does not bar an appeal that raises a jurisdictional question. Id.

The Commerce Clause of the United States Constitution provides in part: "The Congress shall have the power ... [t]o regulate Commerce with foreign Nations, and among the several states." U.S. Const. art. I, §8. Section 922(g)(1), under which Reynolds was convicted, provides in pertinent part that :

> It shall be unlawful for any person–
> (1) who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year
> ...
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate commerce or foreign commerce.

18 U.S.C. §922(g)(1).  We have held that as long as the weapon in question had a "minimal nexus" to interstate commerce, §922(g)(1) is constitutional and the district court has jurisdiction.  See United States v. McAllister, 77 F.3d 387, 390 (11th Cir.), cert. denied, 519 U.S. 905, 117 S.Ct. 262, 136 L.Ed 2d 187 (1996).  The government must prove, however, that the firearm possessed traveled in interstate commerce. See id.; Cunningham, 161 F.3d at  1346.

Here, the interstate commerce nexus has been shown because when Reynolds pled guilty to being a felon in possession, he admitted all the elements of that offense including that the firearm had been shipped or transported in interstate commerce. Moreover, the government has shown that the 12-gauge shotgun was manufactured in Connecticut and then traveled across state lines to Florida, where Reyonlds possessed it.   This movement is sufficient to show the required nexus to interstate commerce.  See McAllister, 77 F.3d at 388 (upholding conviction for possession of a firearm by a felon where government proved that gun was manufactured in California, shipped to South Carolina, and defendant possessed the gun only in Georgia, where he bought it).

Accordingly, we affirm.

**AFFIRMED.**